UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PANKAJ KUMAR, | ) |
| and | ) |
| IVAN CRADDOCK, individually and on behalf of all other similarly situated individuals, | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:16-cv-00905-JAR |
| TECH MAHINDRA (AMERICAS) INC., | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Tech Mahindra (Americas) Inc.'s Motion for Partial Summary Judgment. (Doc. 119.) Tech Mahindra seeks summary judgment on the issues of willfulness, statute of limitations, unjust enrichment, and as to the claims of a number of individual plaintiffs. (Doc. 120.) Plaintiffs largely oppose the motion. (Doc. 126.) Tech Mahindra has replied (Doc. 136), and the motion is ripe for ruling.

### Background

Tech Mahindra is a national information technology ("IT") concern that provides consulting, business process outsourcing, and network technology services. (Doc. 105 at 2.) Its "core business" is IT services for banks, investment firms, telecommunications companies, and railroads, but it serves more than 300 clients throughout the country. (Doc. 95-1 at 3.) Tech

1

Mahindra has roughly 6,000 employees throughout the United States, grouped into ten "families" based on their job duties and corporate role. (*Id*. at 3-4.) Plaintiffs are all members of the "IT Delivery" job family, responsible for providing on-site technical services at the client's location. (*Id*. at 5.) Each job family is subdivided into three "job bands": E (for executives and directors); P (for managers); and U (for individual team members). (*Id*.) Each job band is further subdivided based on relative seniority; for instance, an entry-level member of the IT Delivery family would be assigned to the U1 band while someone with several years of experience might be a U4. (*See id*.) Plaintiffs "all worked in an 'engineer' role under several different job titles in the IT Delivery job family in the U1-U3 band level." (*Id*.)

Tech Mahindra classifies IT Delivery Engineers as salaried employees who are exempt from overtime protection under the "Computer Professional Exemption," asserting that their primary duties are a combination of activities such as consulting with IT users, designing, developing, testing, and modifying computer systems or programs. 29 C.F.R. § 541.400(b). Plaintiffs maintain that their primary duties differ from those listed in the regulations and that they are therefore are not exempt. (Doc. 105.) Plaintiffs filed suit on June 20, 2016, to recoup unpaid overtime pay and seek to proceed as a collective action under the Fair Labor Standards Act ("FLSA") and as a class under the wage and hour laws of Missouri and Washington. (Doc. 105.)

As noted, Tech Mahindra seeks summary judgment on the issues of willfulness, statute of limitations, unjust enrichment, and as to the claims of a number of individual plaintiffs. (Doc. 119.)

**Legal Standards**

To show that there is a genuine issue of material fact, the nonmovant must do more than show there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth affirmative evidence and specific facts by affidavit or other evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). Judgment as a matter of law is appropriate only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party." Fed. R. Civ. P. 50(a).

## Analysis

### 1. Willfulness

Under 29 U.S.C. § 255(a), claims for unpaid overtime must be brought within two years of the alleged violation. However, if the plaintiffs can show that the alleged FLSA violation was "willful," the statute of limitations increases to three years. *Id*. A violation is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Drake v. Steak N Shake Operations, Inc.*, No. 4:14-CV-01535-JAR, 2018 WL 3625769, at *2 (E.D. Mo. July 30, 2018) (quoting *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000)).

Tech Mahindra argues that its good-faith attempt to properly classify Plaintiffs is most evident in a 2015 "comprehensive, company-wide job study and reclassification project," initiated by Tech Mahindra's newly-hired head of human resources. (Doc. 120 at 6.) In her

3

deposition as Tech Mahindra's corporate representative, Anitha Ramesh, a Certified HR Professional who serves as one of Tech Mahindra's Group Managers of Human Resources, explained how a committee of administrators, including the heads of human resources and compliance, approached the project:

> You followed the [Department of Labor] guidelines to do a job study. You talk to managers, understand what role the incumbent does, not just one person. You know, you look at multiple projects, multiple customers to get a comprensi[ve] understanding of the role. And then you do a job duties test and then a salaries test and then decide whether the role should be exempt or nonexempt.

(Doc. 120-1 at 189:7-13.)

To determine employee's actual job responsibilities, the committee interviewed—through phone calls, e-mail, and in-person meetings—managers for each role, from the "P1, P2, [and] sometimes E1" bands. (*Id.* at 189:23, 199:22-25.) The interviews addressed employees' primary responsibilities, as well as the amount of time an employee spends on a given duty. (*Id.* at 202:17-21; 203:6-8.) Based on those interviews, the committee created job descriptions and "principal accountabilities" for each role. (*Id.* at 116:14-20.) Those documents were then shown to managers to confirm that they accurately reflected the employees' daily work. (*Id.* at 117:3-7.) Tech Mahindra sought feedback in this manner from more than 100 individuals. (*Id.* at 117:15-118:2.) Finally, Tech Mahindra incorporated state-specific labor laws to ensure each employee's exempt status complied with his or her home state's regulations.

When the reclassification was completed, Tech Mahindra circulated a fact sheet addressing the policy changes and frequently asked questions. (*Id.* at 193:20-194:1.) In addition, training sessions were held to clarify and educate employees on the changes. (*Id.* at 194:4-7.)

Tech Mahindra also "instituted new mandatory compliance training for managers," following the 2015 company-wide review. (*Id*.)  In addition, Tech Mahindra asserts that it "employs experienced HR professionals who have reviewed and been trained on the FLSA," follows "a comprehensive written overtime policy, and offers ongoing training on proper pay practices." (*Id*. at 5.)

Plaintiffs respond that Tech Mahindra's study is insufficient. They assert that Tech Mahindra failed to consult an attorney or seek advice from the Department of Labor, did not review cases or case law for guidance, did not interview Plaintiffs or their direct supervisors, and failed to train its human resources professionals "on key aspects of the FLSA." (Doc. 126 at 1.) Plaintiffs assert that, rather than interview their direct supervisors to understand the day-to-day duties of U1-U3 IT Delivery Engineers, Tech Mahindra "hand-picked 'principal accountabilities' that were similar among job roles, and then emailed a brief description to [upper-level management personnel] for confirmation." (Doc. 126 at 6.) They cite *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1097 (D.C. Cir. 1984), for the proposition that "failing to contact Plaintiffs' direct managers to scrutinize the potential differences in Plaintiffs' job duties is evidence of willfulness." (*Id*.)

Plaintiffs also argue that Tech Mahindra's failure to keep accurate time records is further evidence of its willful violation of the FLSA. (*Id*. at 4.) It cites testimony from Plaintiffs that Tech Mahindra instructed employees to doctor their timesheets, refused to allow them to record overtime that "was due to the employee's 'personal limitations,'" and made it impossible to record hours worked on the weekends. (*Id*.) They note that Named Plaintiff Pankaj Kumar put Tech Mahindra on notice of its ongoing FLSA violation when he complained to his superiors about a lack of overtime pay. (*Id*. at 6-7.)

Based on the record before it, viewed in the light most favorable to Plaintiffs, the Court concludes that it cannot say, as a matter of law, that Tech Mahindra is entitled to judgment on the issue of willfulness. Generally, "[w]hether a violation is willful is a question of fact." *Arnold v. DirecTV, LLC*, No. 4:10-CV-352 JAR, 2017 WL 1196428, at *14 (E.D. Mo. Mar. 31, 2017) (citing *Koenig v. Bourdeau Const. LLC*, No. 4:13CV00477 SNLJ, 2013 WL 5876712, at *3 (E.D. Mo. Oct. 31, 2013) (collecting cases)). The parties have submitted competing testimony as to the scope, depth, and accuracy of Tech Mahindra's 2015 study, and Plaintiffs have challenged Tech Mahindra's training and compliance programs. Ultimately, a jury could find that Tech Mahindra "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Drake*, 2018 WL 3625769, at *2 (quoting *Jarrett*, 211 F.3d at 1082). Therefore, a genuine issue of material fact exists, and summary judgment is not appropriate.

### 2. Good Faith

FLSA violations are subject to additional liquidated damages equal to the amount of unpaid overtime compensation, unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation." 29 U.S.C. §§ 216(b), 260. The employer must establish "an honest intention to ascertain and follow the dictates of the FLSA." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (quoting *Hultgren v. Cty. of Lancaster, Neb.*, 913 F.2d 498, 509 (8th Cir. 1990)). "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* (quoting *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908 (3d Cir. 1991)).

The Supreme Court has opined that "'it is hard to mount a serious argument' that an employer who has acted in reckless disregard of its FLSA obligations has nonetheless acted in good faith," but "decline[d] to go so far as to rule out the possibility of [finding both] good faith and willfulness in an unusual case." *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1084 (8th Cir. 2000) (citing *EEOC v. City of Detroit Health Dept.*, 920 F.2d 355, 360 (6th Cir. 1990)). This Court agrees and concludes that, for the reasons discussed in the prior section regarding willfulness, it cannot say as a matter of law that Tech Mahindra acted in good faith. As such, the Court will deny summary judgment on the good-faith issue as well.

### 3. *Statute of Limitations – Missouri Minimum Wage Law (MMWL)*

Tech Mahindra next asserts that the appropriate statute of limitations for the MMWL class is two years. (Doc. 120 at 10.) In its Memorandum in Opposition to Class Certification, Tech Mahindra argues that both Missouri statututes and the Missouri Supreme Court hold that the MMWL limitations period is two years. (Doc. 107 at 30-31.) Plaintiffs do not directly respond to Tech Mahindra's argument in either their summary judgment response (Doc. 126), or their class certification reply (Doc. 110).

Plaintiffs filed suit on June 20, 2016. (Doc. 1.) At the time, Missouri Revised Statute § 290.527 read: "All actions for the collection of any deficiency in wages shall be commenced within two years of the accrual of the cause of action." On November 6, 2018, the statute of limitations was extended to three years. Mo. Rev. Stat. § 290.527 (2018). Tech Mahindra argues that Plaintiffs' claims should be bound by the two-year limitation in effect when they filed suit.

Courts generally hold that claims for unpaid overtime accrue "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which

the workweek ends." 29 C.F.R. § 790.21; *see also*, *Hartt v. United Const. Co., Inc.*, 655 F. Supp. 937, 938 (W.D. Mo. 1987), *aff'd*, 909 F.2d 508 (8th Cir. 1990); *Shepard v. City of Waterloo*, No. 14-CV-2057-LRR, 2015 WL 9165915, at *19 (N.D. Iowa Dec. 16, 2015). Thus, each new pay check gives rise to a new claim for unpaid overtime that the employee must bring before the statute of limitations applicable to that claim expires.

Missouri law is clear that, "once the original statute of limitation expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit." *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 341 (Mo. 1993). Said differently, the amended limitations period does not resurrect claims which have already expired. Accordingly, every claim that accrued prior to the November 6, 2018, amendment is subject to the then-effective two-year limitations period, and all claims for unpaid overtime in a paycheck issued earlier than Friday, June 20, 2014—two years before Plaintiffs filed suit—are time-barred. Claims arising after the amendment are subject to a three-year statute of limitations, although that has little effect in this case.

The Court therefore concludes that Tech Mahindra is entitled to summary judgment on this issue and that a two-year statute of limitations applies to MMWL claims for any workweek for which the regular pay day was prior to November 6, 2018.

### 4. *Unjust Enrichment*

Tech Mahindra argues that Plaintiffs cannot prove the required elements of their unjust-enrichment claim. (Doc. 120 at 10-15.) In their response, Plaintiffs do not oppose dismissal. (Doc. 126 at 14.) The Court will therefore dismiss Plaintiff's unjust-enrichment claim with prejudice.

### 5. *Individual Plaintiff's Claims*

Finally, Tech Mahindra argues that the claims of numerous opt-in class members are subject to summary judgment. (Doc. 120 at 15-18.) In light of the Court's ruling decertifying the class, the claims of those opt-in plaintiffs will be dismissed without prejudice. As such, the Court need not address these arguments at this time.

## Conclusion

For the foregoing reasons, the Court concludes that Tech Mahindra is entitled to summary judgment as to some issues and claims.

Accordingly

**IT IS HEREBY ORDERED** that Defendant Tech Mahindra (Americas) Inc.'s Motion for Partial Summary Judgment (Doc. 119), is **GRANTED in part and DENIED in part** as set forth herein.


Dated this 25th Day of March, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE